CERTILMAN BALIN ADLER & HYMAN, LLP
Attorneys for Debtor, Jack Yitzak Daloya
Richard J. McCord, Esq. (RJM 3290)
Carol A. Glick, Esq. (CAG 2675)
90 Merrick Avenue
East Meadow, NY 11554
Telephone: (516) 296-7000
Facsimile: (516) 296-7111

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                                                        Chapter 7

JACK YITZAK DALOYA,                                           Case No. 12-77026 (REG)

                                           Debtor.            Judge: Hon. Robert E. Grossman

------------------------------------------------------------X

## DEBTOR'S OPPOSITION TO MOTION OF CONSUMER FIRST PLAINTIFFS TO REOPEN CLOSED CHAPTER 7 CASE AND TO PERMIT FILING OF A COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF THEIR CLAIMS

Jack Yitzak Daloya, the debtor herein (sometimes referred to herein as the "Debtor"), by his attorneys, Certilman Balin Adler & Hyman, LLP, hereby objects to the Motion of Darlene Henson, Kathie Crete, David Crete, Judy Johns, Randall Johns, Bonnie Scarborough, James Hegler, Deborah Hegler, Lorraine Boardwine, Randy Boardwine, Michael Ellis, Tina Ellis, Phillip Stanford, Shakirah Stanford, Carolyn Campbell, Andrea Niedelman, Barry Niedelman, Levi Gales, Heather Risch and Randall Witt (collectively, the "Consumer First Plaintiffs" or "Movants") for an Order (i) reopening this case pursuant to 11 U.S.C. §§ 350(b), 523(a)(2) and 523(a)(3)(B) and Rule 4007(b) and 5010 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"); (ii) permitting the Consumer First Plaintiffs to file a complaint seeking a determination that their claims are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(3)(B); and (iii) granting such other relief as is just and proper (the "Motion to Reopen").

1

In support of the objection, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

In the Spring of 2012, Mr. Daloya was in dire financial straits, could not pay his bills as they came due, was being hounded by creditors and was named as a defendant in several lawsuits, including the action commenced against him in State Court by the Movants herein (the "State Court Action"). *See* ¶ 4 of Affidavit of Jack Yitzak Daloya ("Daloya Aff."), annexed hereto as **Exhibit 1**. With very few options available to him to protect himself and his young family, on April 5, 2012, Mr. Daloya consulted the Law Office of Elliot S. Schlissel (the "Schlissel Law Firm") regarding filing for bankruptcy protection. He fully disclosed to the Schlissel Firm the existence of the State Court Action. *See* ¶ 4 of Affirmation of Andrea E. Miller, Esq. ("Miller Aff.") filed herewith. The Schlissel Law Firm told the Debtor that the State Court Action would be listed in the bankruptcy petition. Miller Aff., ¶ 6.

On April 6, 2012, Mr. Daloya retained the Schlissel Law Firm to represent him regarding the filing of a Chapter 7 bankruptcy by executing a retainer agreement. Miller Aff., Ex. 1. On the same date, Ms. Miller called Davis Polk & Wardwell LLP ("Davis Polk") and left a message advising them that her office had been retained to prepare and file a Chapter 7 case on behalf of Mr. Daloya. Miller Aff., ¶ 8. On April 9, 2012, Ms. Miller had a telephone conversation with Jillian Stillman, Esq. of Davis Polk, who identified herself as one of the attorneys working on the State Court Action. Aff., ¶ 9. Ms. Stillman then prepared a stipulation extending Mr. Daloya's time to answer the complaint in the State Court Action for Mr. Daloya's signature, as he was not represented in the lawsuit by the Schlissel Law Firm, which was executed and returned to Davis Polk. Miller Aff., ¶ 13. In June 2012, a second stipulation extending time was also entered into between the Debtor *pro se* and Davis Polk on behalf of the Consumer First Plaintiffs. Miller

Aff., Ex. C.

The April 6, 2012 retainer agreement provided, among other things, that (i) Mr. Daloya must provide extensive information and documents to counsel regarding his assets and liabilities; (ii) Mr. Daloya must remit in full the retainer fee of $2,500.00 and the bankruptcy filing fee of $306.00 before the Schlissel Law Firm would file the bankruptcy petition; and (ii) the Schlissel Law Firm was not retained to represent Mr. Daloya in "the class action lawsuit currently pending against you in Supreme Court/Nassau County, to wit: *Squassoni, et al. v. Blackwell, . . . Daloya, et al.*, Index No.: 3571/12." Miller Aff., Ex. A - Retainer Agmt, at 1. Eventually, Mr. Daloya provided the requested documents and information (to the extent that he possessed them) and remitted the full retainer amount and filing fee. Daloya Aff., ¶ 5. While Mr. Daloya was gathering the necessary information and trying to raise the retainer amount and filing fee, Ms. Miller called Davis Polk on two more occasions, each time confirming that she would be filing a Chapter 7 petition on Mr. Daloya's behalf . Miller Aff. ¶ 16. On December 6, 2012, the Schlissel Law Firm filed the Debtor's Chapter 7 petition, and the State Court Action was listed in the Statement of Financial Affairs. Inadvertently, the purported creditors were not listed in the Schedules. Miller Aff., ¶ 19. The Debtor made full disclosure of the State Court Action to his counsel on the first day he met with them and clearly did not intend to conceal the claims of the Consumer First Plaintiffs, as evidenced by Ms. Miller's several contacts with Davis Polk.

In or about October 2012, Davis Polk "performed a docket search to identify any bankruptcy filing by Daloya," but the search did not turn up anything. Declaration of Jillian Stillman, Esq. ("Stillman Decl."), ¶ 8. So Davis Polk just assumed that "Daloya had changed his mind about filing for bankruptcy" and decided to proceed with the litigation against Mr. Daloya. Stillman Decl., ¶ 9. Although forewarned on several occasions that Debtor definitely planned to

file for bankruptcy, Davis Polk did not take the simple step of telephoning or writing to the Schlissel Law Firm to inquire about the status of the Debtor's promised bankruptcy and, instead, subpoenaed him to appear in State Court. Miller Aff., ¶ 22. By letter dated April 18, 2013 (the "Cease and Desist Letter"), Ms. Miller advised Davis Polk that it had violated the automatic stay that came into existence upon the filing of the Debtor's Chapter 7 petition and demanded that they cease and desist from taking any further legal action against the Debtor. Miller Aff., Ex. E. Clearly, Davis Polk had notice or actual knowledge that Mr. Daloya had retained counsel for the express purpose of filing a bankruptcy case; thus, it was incumbent upon the firm to exercise due diligence before continuing to prosecute the State Court Action as against him. <u>Davis Polk failed to exercise the due diligence required under the circumstances</u>. Moreover, after receipt of the Cease and Desist Letter, Davis Polk <u>waited almost two years to file a Motion to Reopen this case</u>. The Debtor was employed by Consumer First for only a few months in 2011 and <u>was not an officer, director, owner or partner</u> in the Consumer First Entities (as defined below). Daloya Aff., ¶ 3. He should be permitted to get on with his life without having to litigate these meritless fraud claims <u>based not on proven moral turpitude or intentional wrong</u>, as required in the Second Circuit, but, rather, on the legal theory that it is possible to impute liability against the Debtor based merely on his prior employment.

As set forth below, Movants have not satisfied the elements of Bankruptcy Code Section 523(a)(3)(B) and cannot sustain an action against the Debtor for fraud under Section 524(a)(2). Therefore, it is respectfully submitted that the Court should deny the Motion.

## BACKGROUND FACTS

1.     On or about March 20, 2012, the Consumer First Plaintiffs and certain other

plaintiffs (totaling twenty-six plaintiffs in all)[1] commenced an action in the Supreme Court of the State of New York, County of Nassau, under the caption *Laura Squassoni, et al. v. Anthony Blackwell, United Legal Solutions, Inc. (a/k/a United Solutions Corporation), United Solutions Law Firm LLC, Consumer First Corporation, Consumer First Law Group LLC, Blackwell's Attorneys LLC, Andre Day, Derrick Lafond, Jake Daloya, Kevin Quinn, Matthew Lapides, Vincent Villani, Jaime Encisco, Gabriel Katz, Jonathan Lyons, Akeem Hutchinson, Matthew Volpe, Aren Goldfaden, Jerzey Bialik, Ralphie Tarazi, and Michael Katz,* Index No. 3571/12 (the "State Court Action"). The Consumer First Plaintiffs were represented in the State Court Action by Davis Polk & Wardwell LLP ("Davis Polk").

2.      According to the Verified Amended Complaint ("Complaint") annexed to the Motion to Reopen as Exhibit A, the corporate entities and law firms named as defendants in the State Court Action provided mortgage modification services to the plaintiffs. The Complaint alleges that Consumer First Corporation ("CFC"), Consumer First Law Group LLC ("CFLG" and together with CFC, the "Consumer First Entities") and others engaged in deceptive practices and false advertising in connection with their mortgage modification business. Comp., ¶ 9. The Consumer First Plaintiffs allege that this conduct violated New York statutory and common law. Comp., ¶ 13.      Therefore, the Complaint seeks redress for the alleged wrongful acts of the Consumer First Entities, their agents, employees and successor corporations, in the form of injunctive relief and monetary damages of not less than $158,015, plus pre-judgment interest, together with other actual damages, consequential damages and punitive damages.[2]

---

[1] The non-moving plaintiffs are Laura Squassoni, Frances Gagliostro, Scott Farley, Cynthia Tabares, Bert Taberes and Sophia Burke (the "United Solutions Plaintiffs"). Upon information and belief, the United Solutions Plaintiffs have asserted claims against defendant entities United Legal Solutions, Inc. (a/k/a Untied Solutions Corporation), United Solutions Law Firm LLC and Blackwell's Lawyers LLC, and the Consumer First Plaintiffs have asserted claims against defendant entities Consumer First Corporation and Consumer First Law Group, LLC.

[2] After succeeding on their motion for default judgment against thirteen (13) defaulting defendants, the plaintiffs in the State Court Action were awarded damages of approximately $82,000.00 against said defendants, jointly and

3.     As set forth in the accompanying Affirmation of Andrea E. Miller, Esq. (the

"Miller Affirmation"), on or about April 6, 2012, the Debtor retained the Law Office of Elliot S.

Schlissel (the "Schlissel Law Firm") to represent him regarding the preparation and filing of this

Chapter 7 case.  Miller Aff., ¶ 2, Ex. A thereto.  At the time of such retention, the Debtor had

already been served with the State Court Action.  Miller Aff., ¶ 4.

4.     The retainer agreement between the Schlissel Law Firm and Mr. Daloya dated

April 6, 2012 (the "Retainer Agreement") provides, among other things, as follows:

> This Retainer requires a legal fee of $2,500.00, which
> covers consultations, drafting, preparation and filing of the
> bankruptcy petition, responding to calls from creditors and
> representation at the first meeting of creditors and at the
> confirmation hearing, if necessary.  There is, in addition to our
> retainer, a U.S. Bankruptcy Court filing fee of $306.00.  Please
> note that it is the policy of this office that the bankruptcy retainer
> and the filing fee must be paid in full prior to the bankruptcy filing
> with the Court.

Retainer Agmt., filed as Ex. A to Miller Aff., at 1 (emphasis supplied).

5.     In the course of preparing the Chapter 7 petition, Ms. Miller requested the Debtor

to provide a list of all his creditors, debts and any lawsuits.  Miller Aff., ¶ 3.  The Debtor

specifically provided Ms. Miller's office with information with regard to the State Court Action,

in which he was served as a defendant, which lawsuit was filed by Davis Polk.[3]  Miller Aff., ¶ 4.

6.     The Debtor explained to Ms. Miller that he worked for "the named defendant

company(ies)" in an entry level position for a brief period and did not have any equitable interest

---

severally, based on a statutory formula, after an inquest held on September 16, 2014.  See transcript annexed as Ex.
B to Motion to Dismiss. (The transcript of the inquest, at pages 18-19, indicates that the Court awarded total
damages of $89,472.01, but that includes damages awarded to the United Solutions plaintiffs who do not have any
claims against this Debtor, and the damages are subject to setoff for previous settlement payments received in the
amount of $28,698.55. Tr., at 12.)

[3] The Retainer Agreement expressly provides that the Schlissel Law Firm is not representing Daloya in connection
with "the class action lawsuit currently pending against you in Supreme Court/Nassau County, to wit: *Squassoni, et
al. v. Blackwell, . . . Daloya, et al.*, Index No. 3571/12. . . ."

in said company(ies) or managerial role.[4] Miller Aff., ¶ 5. As set forth in Mr. Daloya's Affidavit, annexed hereto as **Exhibit 1**, he was employed by CFLG from approximately January 2012 through June 2012, was not a person who exercised any control over the Consumer First Entities and appears to be named as a defendant in the State Court Action merely because he worked there and plaintiffs' counsel cast a wide net. Daloya Aff., ¶ 3.

7.      On or about April 6, 2012, Ms. Miller telephoned the law firm of David Polk to advise them that her firm had been retained by the Debtor regarding a Chapter 7 bankruptcy filing. Miller Aff., ¶ 8. On April 9, 2012, Ms. Miller had a telephone conversation with Jillian Stillman, Esq., who identified herself as an attorney handling the State Court Action. Miller Aff., ¶ 9. Ms. Miller told her that the Schlissel Law Firm had been retained to file a Chapter 7 case for Mr. Daloya and that the State Court Action would be listed in the bankruptcy petition. Miller Aff., ¶ 9.

8.      Ms. Miller also specifically informed Ms. Stillman that the Schlissel Law Firm was not retained to represent Mr. Daloya in the State Court Action, but was <u>retained for the sole purpose of filing his bankruptcy petition</u>. Miller Aff., ¶ 10. However, in light the Debtor's plan to file a bankruptcy case, Ms. Miller asked Ms. Stillman if she would agree to extend Mr. Daloya's time to answer the summons and complaint in the State Court Action. Miller Aff., ¶ 11. Ms. Stillman agreed to send a Stipulation to Extend Time to the Schlissel Law Firm for Mr. Daloya to file as a *pro se* litigant. Miller Aff., ¶ 11. On April 10, 2012 Ms. Miller followed up

---

[4] According to an <u>excerpt</u> of the transcript of a deposition of the Debtor conducted by Jillian Stillman, Esq. on September 9, 2011 in connection with a different litigation at which <u>the Debtor appeared *pro se*</u>, the Debtor testified that the Consumer First Entities were start-up companies and he was one of several team leaders that they employed. *See* Motion to Reopen, Ex. C.   Nonetheless, the Motion states that "Daloya was a partner, floor manager and team leader" at Consumer First Corporation."   Mr. Daloya, who is not an attorney, was employed by CFLG and could not have been a "partner" of the law firm as the N.Y. Rules of Professional Responsibility prohibit it. *See*, e.g., *In re Takvorian*, 240 A.D.2d 95, 670 N.Y.S.2d 211 (App. Div. 2d Dep't 1998) (one-year suspension for, inter alia, forming a partnership with and aiding a nonlawyer in the unauthorized practice of law).

the telephone call with Ms. Stillman with a confirming letter.  Miller Aff., ¶ 12, Ex. B.   On or

about April 20, 2012, Mr. Daloya signed the Stipulation Extending Time.  Miller Aff., ¶ 13.

9.     On June 6, 2012, Ms. Miller contacted Ms. Stillman and left a detailed message

about the status of Mr. Daloya's bankruptcy filing.  Miller Aff., ¶ 15.   On or about June 8, 2012,

Ms. Miller advised Ms. Stillman by telephone that the Schlissel Law Firm had not yet filed the

Chapter 7 petition for Mr. Daloya because they were still in the process of collecting information

and documentation from him. Miller Aff., ¶ 15.  Ms. Miller explained to Ms. Stillman that, given

the complexity and volume of information Mr. Deloya had to gather and the law firm's

obligations with regard to other cases, Ms. Miller anticipated filing Mr. Deloya's bankruptcy

case in approximately 2-6 months.  Miller Aff., ¶ 16.  During the telephone conversation, Ms.

Stillman agreed to further extend Mr. Daloya's time to answer the summons and complaint and

forwarded a Stipulation Extending Time for Mr. Daloya's signature.  Miller Aff., ¶ 15.  A copy

of the Stipulation Extending Time is annexed to the Miller Affirmation as Exhibit C.

## THE BANKRUPTCY FILING

10.     The Schlissel Law Firm filed Mr. Daloya's bankruptcy petition on December 6,

2012.   The State Court Action was listed in the Statement of Financial Affairs, but the

information concerning the action was inadvertently not included on Schedule F.  Miller Aff., ¶

19.

11.     According to Ms. Miller, Davis Polk, by their employee Ms. Stillman, "had notice

on at least four (4) separate and distinct occasions that a Chapter 7 bankruptcy was being filed on

behalf of Jake Daloya by my office."  Miller Aff., ¶ 20 (emphasis supplied).

12.     The Debtor received a discharge on March 12, 2013.

13.     On or about April 11, 2013, Davis Polk served an Amended Subpoena Duces

20.     Section 523(a)(3)(B) of the Bankruptcy Code provides that a discharge under section 727 does not discharge an individual debtor from any debt "neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit . . . if such debt is a kind specified in paragraph (2), (4), or (6) of this subsection, . . . timely request for a determination of dischargeability of such debt under one of such paragraphs, *unless such creditor had notice or actual knowledge of the case in time for such timely filing and request*." 11 U.S.C. § 523(a)(3)(B) (emphasis supplied).

21.     Courts in the Second Circuit look "to the totality of the circumstances" in determining whether a creditor was adequately apprised of the proceeding. *Massa v. Addona (In re Massa)*, 187 F.3d 292, 297 (2d Cir. N.Y. 1999), *quoting  Dinova v. Harris (In re Dinova)*, 212 B.R. 437, 443 (B.A.P. 2d Cir. 1997).

22.     For purposes of Section 523(a)(3)(B), it is sufficient to satisfy due process concerns if the attorney for the creditor has notice or actual knowledge of the bankruptcy case. *See, e.g., Franzone v. Elias (In re Elias)*, 2014 U.S. Dist. LEXIS 39591 at *15 (E.D.N.Y. Mar. 25, 2014) (*quoting In re Price*, 871 F.2d 97, 99 (9th Cir. 1989) (when creditor's counsel "was pursuing the same claim in state court that the creditor now seeks to have declared nondischargeabile," notice to counsel was sufficient); *In re Linzer*, 264 B.R. 243, 249 (Bankr. E.D.N.Y. 2011) ("when a non-bankruptcy counsel is actively engaged in prosecuting a creditor's claim against the debtor before a non-bankruptcy tribunal, that is a sufficient nexus to the bankruptcy case to justify imputing authorized agency"). Here, Davis Polk was actively engaged in prosecuting monetary claims asserted by the Consumer First Plaintiffs against Mr. Daloya, one of twenty-six (26) defendants named in the State Court Action

23.     Section 523(a)(3)(B) is satisfied if (i) the creditor was known to the debtor; (ii)

Tecum and Ad Testificandum upon the Debtor in connection with the State Court Action. Miller Aff., ¶ 22.

14.     By letter dated April 18, 2013, the Schlissel Law Firm sent a cease and desist letter to Davis Polk, to the attention of Daniel F. Kolb, Esq., advising him that Mr. Daloya had filed a Chapter 7 petition and that the State Court Action was listed therein. Miller Aff., ¶ 23, Ex. E thereto.

15.     On May 15, 2013, the Trustee filed a Report of No Distribution.

16.     The Chapter 7 case was closed on May 16, 2013.

17.     On June 7, 2013, the plaintiffs in the State Court Action moved to discontinue the litigation as to the Debtor, without prejudice. Motion, ¶ 13. The State Court entered an order on August 14, 2013 granting the motion for voluntary discontinuance. Motion, ¶ 13.

18.     On January 16, 2015, the Consumer First Plaintiffs filed this Motion to Reopen, arguing that they had claims against the Debtor under Section 523(a)(2) of the Bankruptcy Code, which were not discharged because of the applicability of Section 523(a)(3)(B).

## BASIS FOR DEBTOR'S OPPOSITION TO MOTON TO REOPEN

### I.    Movants Cannot Satisfy the Requirements of Section 523(a)(3)(B)

19.     Section 350(b) of the Bankruptcy Code states that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The determination on a motion to reopen a closed bankruptcy case is within the sound discretion of the bankruptcy court. *State Bank of India v. Chasani (In re Chalasani)*, 92 F.3d 1300, 1307 (2d Cir. 2991); *In re Lowery*, 2008 Bankr. LEXIS 3439 (Bankr. E.D.N.Y. Dec. 31, 2008).

the creditor was not scheduled in time to permit a timely complaint for nondischargeability; (iii) the creditor was not otherwise aware of the bankruptcy; and (iv) the claim is of the type specified in section 523(a)(2), (4) or (6). *In re Lerner*, 515 B.R. 26, 31 (Bankr. E.D.N.Y. 2014); *In re Garland*, 501 B.R. 195, 199 (Banrk. S.D.N.Y. 2013).

24.   <u>Claims of the Creditors Were Known to the Debtor</u>.  The claims of the Consumer First Plaintiffs were known to Mr. Deloya, although he did not have their individual contact information. His only contact had been with Davis Polk. He advised the Schlissel Law Firm of the State Court Action and of the claims asserted against him by the plaintiffs in that action. The existence of the lawsuit is mentioned in the Retainer Agreement. That is what prompted Ms. Miller to contact Davis Polk the first time on April 6, 2012 and again on April 9, 2012, at which time she advised Ms. Stillman that the Schlissel Law Firm had been retained to file a Chapter 7 case on behalf of Mr. Deloya.

25.   Ms. Miller also contacted Ms. Stillman by phone on June 6, 2012 and June 8, 2012, at which time Ms. Miller again advised Ms. Stillman and Davis Polk that Mr. Deloya was accumulating information and documents for the purpose of completing a bankruptcy petition. Ms. Miller made clear that the Debtor still intended to file a Chapter 7 case. Additionally, Mr. Daloya was in financial straits and had not yet remitted the entire retainer amount and Chapter 7 filing fee which had to be paid in full before the filing. Daloya Aff., ¶ 5.

26.   <u>Consumer First Plaintiffs Received Notice</u>.  Notice of the bankruptcy can be imputed to the Consumer First Plaintiffs as Ms. Stillman and Davis Polk were actively engaged in prosecuting the claims of the Consumer First Plaintiffs against the Debtor before the Supreme Court of the State of New York, County of Nassau, and hence had sufficient nexus to the Debtor's bankruptcy case to act as agent for notice. *Elias*, 2014 U.S. Dist. LEXIS 39591 at *15;

11

*Linzer*, 264 B.R. at 249.

27.    When the Schlissel Law Firm filed the Debtor's Chapter 7 petition on December 6, 2012, the State Court Action was listed in the Statement of Financial Affairs, although it was inadvertently omitted from Schedule F.

28.    Although the Consumer First Plaintiffs did not receive formal notice from the Bankruptcy Court, Ms. Stillman and Davis Polk did receive notice on April 6, April 9, June 6, and June 8, 2012 that Mr. Daloya intended to file a bankruptcy petition and then he proceeded to do so.   Ms. Stillman states in her Declaration filed with the Motion to Reopen that, when preparing to make a motion for default judgment in the State Court Action, in October 2012 Davis Polk "performed a docket search to identify any bankruptcy filing by Daloya" but "[t]he docket search did not locate any filing by him."   Stillman Decl., ¶ 8.   Ms. Stillman and Davis Polk decided that "Daloya had changed his mind about filing for bankruptcy" and proceeded against him as if no bankruptcy had been filed. Stillman Decl., ¶ 9.   However, their prior discussions and correspondence with Ms. Miller imposed on them a duty to pick up the phone and call the Schlissel Law Firm to inquire about the status of the promised bankruptcy filing rather than dispensing with any due diligence whatsoever.

29.    In *GAC Enterprises, Inc. v. Medaglia (In re Medaglia)*, 52 F.3d 451 (2d Cir. 1995), the Second Circuit Court of Appeals dealt with a situation where the attorneys for appellant creditors had notice or actual knowledge of a chapter 7 case, notwithstanding the absence of formal notice from the Bankruptcy Court.   Appellant creditors contended, among other things, that the bankruptcy court's application of Section 523(a)(3)(B) violated due process. *Id.* at 455. The Second Circuit disagreed with the appellants' contention, opining as follows:

"The fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Central Hanover Bank & Trust Co.*, 399 U.S. 306, 314, 94 L.Ed. 865, 70 S.Ct. 652 (1950) (*quoting Grannis v. Ordean*, 234 U.S. 385, 394, 58 L.Ed. 1363, 34 S.Ct. 779 (1914).    The means to that end is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane*, 339 U.S. at 314. . . .

Section 523(a)(3)(B) contemplates the situation of unlisted creditors who have timely, actual knowledge of a "case" but fail to receive official notice of the bar date. ***The section imposes a burden on such creditors to come forward before the bar date.*** As the brief from the United States reminds us, *it is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take the necessary steps to preserve that right*.

*Id.* (emphasis supplied).

30.    The Second Circuit went on to explain that at least four courts of appeal had rejected the argument that Bankruptcy Code Section 523(a)(3)(B) offends due process:

The argument that the "actual knowledge" proviso of § 523(a)(3)(B) offends due process has been specifically rejected by at least four courts of appeals: *In re Sam*, 894 2d 778, 781-82 (5th Cir. 1990); *In re Green*, 876 F.2d 854, 856 (10th Cir. 1989); *In re Price*, 871 F.2d 97, 99 (9th Cir. 1989); *Alton*, 837 F.2d at 460 (11th Cir.). We agree with the reasoning of these cases.

*Id.* Furthermore, the Second Circuit stated that the Bankruptcy Code itself, "in § 523(a)(3)(B), [] contain[s] a constructive notice clause that makes crystal clear that a creditor with timely, actual knowledge of the 'case' does ***not*** have the 'right to assume' that it will receive formal notice before its claims are barred." Id. at 457 (emphasis in original).

31.    Based on the totality of the circumstances, Davis Polk was required to exercise due diligence and pick up the phone to call Ms. Miller to find out the status of the promised bankruptcy filing. It did not have the "***right to assume***" that the Debtor "had changed his mind about filing for bankruptcy" or that it would receive formal notice before the deadline for filing a

complaint had passed.

32.      In addition, <u>Davis Polk waited for almost two (2) years after receipt of the April 18, 2013 letter from Ms. Miller to assert its clients' rights in the Bankruptcy Court</u>. Instead, Davis Polk pursued the litigation tactic of discontinuing the State Court Action as to Daloya, without prejudice, so that it could proceed to prosecute its motion for default judgment against all the other defaulting defendants, proceed by inquest to quantify its claim(s) against the defaulting defendants, and obtain a monetary judgment against said defaulting defendants based on joint and several liability.[5]  Now, after waiting almost two years after receiving the Cease and Desist Letter, Davis Polk seeks to reopen this no-asset case and pursue an action for nondischargeability under Section 523(a)(2) against Mr. Daloya, who was a minor staff employee of CFLG for a brief period in 2011.

## II.     <u>Movant Cannot Sustain Fraud Claims Against the Debtor Under Section 523(a)(2)</u>

33.      Courts are divided as to whether the claimant must prove that it would have ultimately prevailed in the underlying causes of action, or whether the claimant need only show a colorable claim "of the kind" that section 523(a)(3) contemplates. *In re Garland*, 501 B.R. 195, 201 (Bankr. S.D.N.Y. 2013), *citing In re Bartomeli*, 303 B.R. 254, 267-698 (Bankr. D. Conn. 2004).  Some cases hold that Congress did not intend for the penalty imposed by section 523(a)(3) to affect substantive law. See *Garland*, at 201; *Bartomeli*, at 269.  *But see Haga v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA (In re Haga)*, 131 B.R. 320, 326 (Bankr. W.D. Tex.

---

[5] Upon information and belief, the Consumer First Plaintiffs assert a claim of approximately $82,000.00 against Mr. Daloya, plus statutory interest, based on the judgment obtained against the defaulting defendants.  See footnote 2, *supra*.  Upon information and belief, no trial has been held with respect to the remaining defendants, if any, who have answered the Complaint, and the State Court has made no determination of actual fraud in connection with the default judgments. Upon information and belief, there may have been a finding that the defaulting defendants had violated certain statutory provisions of New York law.

14

1991). It is respectfully submitted that under the circumstances here, to prevail on the Motion to Reopen Movants should be required to prove that they would have prevailed on a timely-filed fraud objection. *See In re Bartomeli*, 303 B.R. at 270.

34.    The proposed complaint annexed to the Motion to Dismiss seeks a judgment that any debt which the Debtor may owe to the Consumer First Plaintiffs are excepted from discharge based on Section 523(a)(2). Exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *In re Evans*, 410 B.R. 317, 319 (Bankr. M.D. Fla. 2009) *citing In re Hunter*, 780 F.2d 1577, 1579 (11th Cir. 1986), citing *Household Finance Corp. v. Danns (In re Danns)*, 558 F.2d 114, 116 (2d Cir. 1977); *In re Balzano*, 127 B.R. 524, 529 (Bankr. E.D.N.Y. 1991). Pursuant to Section 523(a)(2)(A), a debtor cannot discharge a debt to the extent the debt is obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's financial condition. 11 U.S.C. § 523(a)(2)(A). *"[F]raud is not presumed, and . . . the type of fraud required to render a debt nondischargeble is positive fraud involving moral turpitude or intentional wrong, and not implied fraud which does not involve bad faith or immorality on the part of the defendant."* *MacDonald v. Buck (In re Buck)*, 75 B.R. 417, 420-21 (Bankr. N.D. Cal. 1987) (emphasis supplied). *See also In re Newmark*, 20 B.R. 842, 854 (Bankr. E.D.N.Y. 1982) ("The type of fraud contemplated by . . . section [523(a)(2)] and the rationale underlying it was construed by the Supreme Court to be *positive fraud, or fraud in fact, involving moral turpitude or intentional wrong*, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.") (emphasis supplied).

35.    The elements of a fraud claim under section 523(a)(2)(A) are (1) the debtor made the representations; (2) at the time he knew they were false; (3) the representations were made

with the intention and purpose of deceiving the creditor; (4) the creditor relied on such representations; and (5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. *In re Garland*, 501 B.R. 195, 200 (Bankr. E.D.N.Y. 2013).

36.    Here, the Debtor did not communicate with the Consumer First Plaintiffs or any customers of the Consumer First Entities. Daloya Aff., ¶ 3. His duties were limited to making sure that four or five salespeople on his team were following up on leads given to them by upper management and not wasting company time. Daloya Aff., ¶ 3. The Debtor had no intent to deceive any of the Consumer First Plaintiffs.  In sum, he did not make any representations to the Consumer First Plaintiffs on which they could have relied, and any losses which may have been sustained by the Consumer First Plaintiffs were not proximately caused by the Debtor.

37.    Movants allege that (i) the Consumer First Entities were engaged in a fraudulent mortgage scheme, Motion, ¶¶ 17-21; (ii) the Debtor was "a partner, floor manager and team leader at the Consumer First Entities," Motion, ¶ 13, and (iii) he facilitated the fraudulent scheme in which the Consumer First Entities were engaged, Motion, ¶ 22. The Movants seek a judgment of nondischargeability against the Debtor not because he made any false representations or engaged in any act of moral turpitude or intentional wrong, but because they allege he was an active and knowing participant in the scheme to defraud, and therefore the fraud should be attributable to the Debtor.  The Movants cite case law outside this Circuit in support of this theory. *See, e.g., MacDonald v. Buck (In re Buck)*, 75 B.R. 417, 420-21 (Bankr. N.D. Cal. 1987) (debtor was found to be an active participant in a fraudulent investment scheme with her nondebtor spouse where the plaintiff established that he handed two investment checks to the debtor, she endorsed them on the back and was the sole signatory on the bank account);

*Chandler v. Alexakis (In re Alexakis)*, 2012 Bankr. LEXIS 5795 (Bankr. S.D. Ohio Dec. 13, 2012) (state court judgment established that debtor, president of company, was a co-conspirator in company's fraudulent scheme and debtor's own fraudulent misrepresentations led to the loss of plaintiffs' home); *Blackmon v. Evans (In re Evans)*, 410 B.R. 317 (Bankr. M.D. Fla. 2009) (debtor, treasurer of co-conspirator company, executed false loan applications intended to create and foster a false impression in furtherance of fraudulent scheme). Here, the Debtor was not an officer, director, owner or partner in the Consumer First Entities; he made no false representations to anyone; and there has been no finding in any forum of a conspiracy to commit fraud.

38. Movants also cite *Warthog, Inc. v. Zaffron (In re Zaffron)*, 303 B.R. 563, 571 (Bankr. E.D.N.Y. 2004) and *Pisano v. Verdon (In re Verdon)*, 95 B.R. 877, 882-83 (Bankr. N.D.N.Y. 1989) for the proposition that the actions of someone other than the debtor may be attributed to the debtor based on agency theory. Motion, ¶ 48. In *Zaffron*, the Court held that the debtor was liable for the fraud of his business partner based on agency theory because the debtor knew his partner was making false statements to the creditor regarding their business and the debtor did not correct him. That is not the situation here. *Id.* at 571-72. The Debtor's employment at CFLG did not create any fiduciary agency relationship between the Debtor and his employer. In *Verdon*, the creditor alleged that the debtor was the agent for her daughter and, as agent, should be liable for the fraud of her daughter. The *Verdon* Court found that, while the daughter may have made false representations to the creditor with whom she had cohabited and had three children, there was no evidence that the debtor actively participated in her daughter's actions. Here, too, the Debtor cannot be found to be liable based on agency theory for representations made by the Consumer First Entities.

17

## CONCLUSION

**WHEREFORE**, it is respectfully requested that the Court deny in its entirety the Motion to Reopen the Debtor's Chapter 7 case to permit the Consumer First Plaintiffs to file a complaint seeking a determination that their claims are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(3)(B); and grant such other, further and different relief to the Debtor as may be just, proper and equitable.

Dated: East Meadow, New York
       March 23, 2015

                                   **CERTILMAN BALIN ADLER & HYMAN, LLP**
                                   Attorneys for Jack Yitzak Daloya


                          By      /s/ Richard J. McCord
                                  Richard J. McCord (RJM 3290)
                                  Carol A. Glick (CAG 2675)
                                  90 Merrick Avenue
                                  East Meadow, NY 11554
                                  (516) 296-7000